UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
                                                    :
ANAND DAVE,                                         :
                                                    :
                    Plaintiff,                      :    Case No: 15-cv-03097 (PGG)
                                                    :
        *v.*                                         :
                                                    :    **FIRST AMENDED COMPLAINT**
THE MOUNT SINAI HOSPITAL, JENNIFER                  :
CONSTANTINO, BERNARD DUMAS, LISA                    :    **JURY TRIAL DEMANDED**
MAZIE,                                              :
                                                    :
                    Defendants.                     :
                                                    :
-----------------------------------------------------------------X

1.      Plaintiff Anand Dave, for his Complaint against Defendants The Mount Sinai Hospital ("Mount Sinai"), Jennifer Constantino ("Constantino"), Bernard Dumas ("Dumas"), and Lisa Mazie ("Mazie") (collectively "Defendants"), alleges and states as follows:

2.      Plaintiff brings this action to remedy unlawful disability discrimination and retaliation in the terms and conditions of employment in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. §12101 *et seq.*, as amended by the ADA Amendments Act of 2008, (the "ADA"), the New York State Human Rights Law, N.Y. Executive Law §290 *et seq.* ("NYSHRL"), and the New York City Human Rights Law §8-107 *et seq.* ("NYCHRL").

3.      Plaintiff seeks injunctive and declaratory relief, compensatory and punitive damages, and other legal and equitable relief.

4.      Plaintiff Anand Dave ("Dave"), a Physician Assistant licensed, registered with the State of New York, and in good standing at all times relevant herein, was terminated in

violation of his rights by Defendants Mount Sinai, Dumas, Constantino, and Mazie on October 14, 2011. Defendants violated Mr. Dave's rights by maliciously and willfully harassing him and terminating him upon learning that he had a disability, and by refusing to even consider a reasonable accommodation that would have permitted him to perform all of the functions of his job – indeed by conspiring to circumvent their known legal obligations and Mr. Dave's rights, and by retaliating against him for engaging in protected activity.

5.      Plaintiff seeks reinstatement to his position as Physician Associate with Mount Sinai in New York, New York with full back pay and fringe benefits, as well as compensatory damages for humiliation, substantial loss of marketability in his career, and pain and suffering. He also seeks punitive damages for the wanton and intentional – and shocking – violation of his rights at the hands of Defendants.

## JURISDICTION

6.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §§1331 and 1343 in that this is a civil action concerning the deprivation of Plaintiff's rights under the ADA. This court also has supplemental jurisdiction over Plaintiff's related claims arising under state and local laws pursuant to 28 U.S.C. §1367(a).

## VENUE

7.      Venue is proper in this district under 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this district.

## CONDITIONS PRECEDENT

8.      On or around January 19, 2012, Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge Number

520-2012-00185. This complaint, which alleged, *inter alia*, the violations of the ADA described below, was dual-filed with the New York States Division of Human Rights. On or around January 20, 2015 the EEOC mailed Plaintiff a Right-to-Sue Notice. This action commenced within the limitations period applicable to those Right-to-Sue Notices. Accordingly, Plaintiff has fully satisfied the administrative prerequisites for his claims under all applicable laws.

## PARTIES

9.     Plaintiff Anand Dave is a former employee of Defendant Mount Sinai who currently resides in Albertson, New York, and is a citizen of the United States of America. Mr. Dave worked in New York City, New York while employed by Defendant Mount Sinai. At all relevant times, Mr. Dave fell within the definition of a "person" and/or an "employee" under all applicable statutes.

10.     Mount Sinai is a domestic professional corporation organized under the laws of the State of New York, maintains offices and does business throughout the New York area, and maintains offices at One Gustave L. Levy Place, New York, New York 10029-6574 where Mr. Dave worked. At all relevant times, Mount Sinai was an "employer" within the meaning of all applicable statutes.

11.     At all relevant times, Defendant Bernard Dumas was the Labor Relations Manager responsible for managing Mr. Dave's employment relationship with Mount Sinai. In this capacity, Defendant Dumas participated directly in the unlawful conduct described herein. Upon information and belief Defendant Dumas resides in New York, New York, and is a citizen of the United States of America. At all relevant times, Defendant Dumas was an "employer" within the meaning of all applicable statues.

12.     At all relevant times, Defendant Jennifer Constantino was the Chief Physician Assistant and Mr. Dave's direct supervisor. In this capacity, Defendant Constantino participated directly in the unlawful conduct described herein. Upon information and

belief, Defendant Constantino resides in New York, New York, and is a citizen of the United States of America. At all relevant times, Defendant Constantino was an "employer" within the meaning of all applicable statues.

13.     At all relevant times, Defendant Lisa Mazie was the Administrative Director in the Department of Orthopedics. In this capacity, Defendant Mazie participated directly in the unlawful conduct described herein. Upon information and belief Defendant Mazie resides in New York, New York, and is a citizen of the United States of America. At all relevant times, Defendant Mazie was an "employer" within the meaning of all applicable statues.

## DEFENDANTS' DISCRIMINATION AND RETALIATION

14.     Defendants hired Mr. Dave on March 17, 2008 as a "Senior Physician Associate" in the Department of Orthopedics of Mount Sinai. Mr. Dave commenced his employment on or about April 28, 2008.

15.     During his tenure at Mount Sinai, Mr. Dave was a highly valued and respected employee, consistently receiving excellent job performance evaluations. Despite Mr. Dave's many achievements, Defendants discriminated against him, summarily fired him without providing a reasonable accommodation for his disability, and harassed and retaliated against him. As a result, Mr. Dave has suffered significant emotional and monetary damages.

16.     In or around April 2006, approximately two (2) years prior to his employment with Defendant Mount Sinai, Mr. Dave earned his Master's Degree in Physician Assistant Studies from South University in Savannah, Georgia.

17.     On or around September 11, 2001, approximately five (5) years prior to earning his Master's Degree, Mr. Dave was a voluntary first responder and medical volunteer at

the site of the World Trade Center in New York City ("WTC") following the terrorist attack. Mr. Dave spent approximately five (5) days at the WTC where he served as a medical volunteer and assisted with the search for and the rescue and recovery of victims. On a daily basis Mr. Dave encountered bodies of the deceased, body parts of deceased victims, rubble, air contaminated with debris, and multitudes of people who were grieving, traumatized, and asking him and other WTC workers if their loved ones were found in the area. Following his work at the WTC, Mr. Dave volunteered at the Cornell Burn Center ("CBC") for three (3) additional days. At the CBC Mr. Dave assisted with the treatment of burn victims.

18.     In or around 2011, after having worked for Defendant Mount Sinai for approximately three (3) years, Mr. Dave began to have respiratory trauma symptoms related to his work at the WTC and sought treatment at the World Trade Center Monitoring Program at The Mount Sinai Medical Center (the "Monitoring Program"). Mr. Dave was diagnosed with Restrictive Lung Disease, Chronic Sinusitis, Gastroesophageal Reflux Disorder, Post-Traumatic Stress Disorder, Generalized Anxiety Disorder, and Major Depression.

19.     Since 2011, Mr. Dave has been monitored and treated by the Monitoring Program with immunotherapy, medications, and steroids. Mr. Dave has also been treated with Selective Serotonin Reuptake Inhibitors, anti-anxiety medications, and psychotherapy. Mr. Dave has been fully compliant with the recommendations and instructions of the Monitoring Program.

20.     Since childhood, Mr. Dave has been challenged by a speech impediment commonly known as stuttering. It is a condition profoundly exacerbated by anxiety and stress. Mr. Dave has always successfully performed his responsibilities as a PA without any accommodation related to his speech condition.

21.     Mr. Dave was hired by Defendants on or about March 17, 2008 and began working for Defendants on or about April 28, 2008 as a Senior Physician Associate in the

Department of Orthopedics.

22.    Mr. Dave's primary responsibilities in the Department of Orthopedics at Defendant Mount Sinai were to (a) verify and prepare patient records prior to surgery; (b) verify that patients were suitable surgical candidates; (c) assist in surgery alongside a Surgeon and Surgical Residents; (d) work with an Anesthesiologist, an Anesthesia resident, and nursing staff to ensure patients were stable and comfortable in the post-operative phase of their treatment; (e) enter medical orders into a computer order system; (f) order and interpret lab and diagnostic tests; and (g) write prescriptions for post-operative patients.

23.    In addition to working full-time in the Department of Orthopedics at Defendant Mount Sinai, Mr. Dave also worked additional *per diem* shifts in both the Department of Cardiothoracic Surgery and the Department of Medicine. In the Department of Cardiothoracic Surgery, Mr. Dave assisted in the management of patients recovering from heart and lung surgery. In the Department of Medicine, Mr. Dave responded to calls from nurses and managed patients in conjunction with physicians during night shifts.

24.    During his tenure, Mr. Dave's work performance met or exceeded Defendants' legitimate expectations. Mr. Dave's reviews of his performance were consistently excellent. In or around December 2008 and December 2009, the first two years of his employment with Defendant Mount Sinai, Mr. Dave received performance evaluations from Defendant Constantino with scores of "Meets Expectations".

25.    Surgeons with whom Mr. Dave worked on a daily basis wrote glowing references for prospective employers, stating that Mr. Dave was an exceptional PA, describing him as "efficient and skilled, knowledgeable and smart"; as "an outstanding member of the Orthopedic surgery team"; and as a "major factor in the success of the Orthopedic Surgery program".

26.    On or about July 11, 2011 Mr. Dave learned that his grandmother, with whom he

was very close, was suffering from Multi-Organ System Failure and would imminently die. Mr. Dave's family asked Mr. Dave to return to India to visit her on her deathbed before she passed.

27.     Unfortunately, at that same time, Mr. Dave's aunt was diagnosed with terminal lung cancer and was receiving hospice care in Pennsylvania. Mr. Dave and his family were suffering a crisis and Mr. Dave requested leave to comfort them in their time of need. Mr. Dave requested leave from July 18 until August 9, 2011 to be with either his grandmother or aunt, as it was unknown at that time who would die first.

28.     Mr. Dave met with Defendant Constantino, his direct supervisor, on or around July 11, 2011, to discuss leave. Mr. Dave explained the urgency and necessity of this leave as he needed to make travel and other arrangements.

29.     Defendant Constantino and Mr. Dave agreed that, due to staffing shortages at Defendant Mount Sinai, Mr. Dave would take his leave when staffing in the Department of Orthopedics was sufficient, and would work when staffing levels were inadequate. Mr. Dave agreed to abide by Defendant Constantino's requirements.

30.     On or about July 15, 2011, Defendant Dumas, Mount Sinai Labor Relations Representative, asked Mr. Dave to meet with him to discuss, upon information and belief, whether the leave requested would count against Mr. Dave's Personal Time Off ("PTO") or Family Medical Leave Act ("FMLA") days.

31.     On or about July 15, 2011, just prior to meeting with Defendant Dumas, Mr. Dave learned that his grandmother had died. Following receipt of the devastating news, and after a brief in-person meeting, Defendant Dumas sent Mr. Dave home.

32.     On or about that same day, Defendant Dumas determined that Defendant Mount Sinai's policy concerning bereavement applied and that Mr. Dave was entitled to three (3) paid Condolence Days. Defendant Dumas informed Mr. Dave that, since his

grandmother had died, FMLA leave would not apply and any time taken would be counted against Mr. Dave's PTO.

33.    On or about July 15, 2011, promptly following his meeting with Defendant Dumas, Mr. Dave received a telephone call from Defendant Constantino during which Constantino instructed Mr. Dave to *not* leave the Hospital. Mr. Dave was constrained to inform her that he was not in adequate condition to treat patients with the level care they required and suggested that Defendant Constantino consult Defendant Dumas over the mater.

34.    On or about July 15, 2011, the same day he learned of his grandmother's death, Mr. Dave injured his back while exiting his car and immediately began experiencing severe pain. Mr. Dave would subsequently learn that the pain resulted from a Lumbar Spine Acute Spasm, an L4-L5 Disc Herniation, and Severe Spinal Stenosis. Mr. Dave suffered and continues suffering from severe chronic back pain and spasms related to his disability.

35.    In accordance with his pre-established work schedule, Mr. Dave took the Condolence Days due to him pursuant to Defendant Mount Sinai's policy on July 18, 19, and 20, 2011.

36.    On or about July 20, 2011 Mr. Dave informed Defendant Mount Sinai of his severe back pain and was sent Family Medical Leave Act ("FMLA") paperwork by Defendant Constantino to be completed by a Physician.

37.    On July 21, 2011, Sanjiv Bansal, M.D., a General Orthopedic Surgeon ("Dr. Bansal"), examined Mr. Dave and found that Mr. Dave suffered from Lumbar Spine Acute Spasm and that Mr. Dave would be unable to work for four (4) weeks, or until August 15, 2011.

38.    By letter dated July 21, 2011, with copy to Defendant Mazie, Defendant

Constantino informed Mr. Dave that his requested leave from on or about July 18, 2011 until August 9, 2011, with terms agreed upon between Mr. Dave and Defendant Constantino, was "not approved". Defendant Constantino informed Mr. Dave that he was entitled to the three (3) condolence days only, that his employment file would be marked with a "no show" for July 21, 2011 notwithstanding his pre-approved leave, and that if he did not return to work by the beginning of his shift on July 25, 2011 he would be "subject to disciplinary action, including termination."

39.      On or about July 21, 2011, in accordance with Defendant Mount Sinai's policy, Mr. Dave provided Dr. Bansal a "Certification for Healthcare Provider" to complete on his behalf. Dr. Bansal completed the requested paperwork and sent it to Defendant Dumas on or about August 2, 2011.

40.      By email sent on or about August 3, 2011, Defendant Dumas informed Mr. Dave that the FMLA paperwork submitted by Bansal was "illegible" and demanded it be re-written and re-submitted.

41.      Mr. Dave provided the forms to Dr. Bansal, Dr. Bansal re-wrote the FMLA forms and returned them Mr. Dave, and Mr. Dave provided them to Defendant Dumas on or about August 9, 2011. The FMLA forms executed by Bansal stated that Mr. Dave would be "incapacitated" from July 15, 2011 through August 29, 2011.

42.      On or about August 10, 2011 Mr. Dave underwent a Magnetic Resonance Imaging exam ("MRI") which demonstrated that Mr. Dave was suffering from a Central (Spinal) Disc Extrusion at L4-L5 causing severe Spinal Stenosis. As a result, of the MRI results, Dr. Bansal recommended that Mr. Dave consult a spine surgeon immediately for further evaluation and treatment.

43.      On or about August 11, 2011, Mr. Dave was examined by a second Physician, Sean McCance, M.D., an Orthopedic Spine Surgeon who was at all relevant times was the Co-Chief of Orthopedic Spine Surgery at Defendant Mount Sinai – the same

department where Mr. Dave and Defendants Constantino and Mazie worked – and who maintained a clinical office at 1155 Park Avenue, New York, New York 10128 ("Dr. McCance"). Dr. McCance diagnosed Mr. Dave's condition as L4-L5 Herniation and Severe Spinal Stenosis and recommended prompt surgery to relieve the pressure on Mr. Dave's spinal cord and the disabling pain.

44.    As a result of the examination, Dr. McCance recommended prompt surgery to relieve the pressure on Mr. Dave's spinal cord and the disabling pain he was suffering as a result.

45.    Mr. Dave, who suffered from L4-L5 herniation and severe spinal stenosis, as well as the permanent post-operative condition chronic back pain and spasms, is a qualified individual with a disability under all applicable laws. As a result of Mr. Dave's disability, major life activities, such as bending, lifting, and twisting were limited.

46.    On or about August 17, 2011, the earliest date available, Dr. McCance performed spinal surgery on Mr. Dave at Defendant Mount Sinai. The surgery partially removed a severely herniated L4-L5 disk in a procedure called an L4-L5 Laminectomy and Microdiscectomy.

47.    On or about August 19, 2011, Mr. Dave was released from Mount Sinai to continue his recovery at home.

48.    On or about August 24, 2011, Defendant Dumas requested that Mr. Dave obtain a letter from Dr. McCance indicating Mr. Dave's expected recovery period and a projected date on which Mr. Dave could return to work.

49.    By letter dated August 29, 2011, Dr. McCance informed Defendant Mount Sinai that Mr. Dave had been under his care since August 11, 2011. He informed Defendant Mount Sinai that Mr. Dave was diagnosed with an L4-L5 herniated disc with severe stenosis. He informed Mount Sinai Mr. Dave underwent an L4-L5 laminectomy on or

about August 17, 2011. He informed Sinai that Mr. Dave "may return to work on October 3, 2011 but may not do any bending, twisting, or lifting of greater than 10 pounds [and that Mr. Dave] may return to work without restrictions on November 17, 2011."

50.     Mount Sinai's Human Resources Policy, "Employment Standards #2.1", provides that

> "In compliance with the Americans with Disabilities Act, *the Medical Center **will** make reasonable accommodations for qualified individuals who are able to meet the essential functions of their positions*. A committee which consists of representatives from Human Resources, Engineering Services, Facilities Design & Construction, Rehabilitation Medicine, and the department employing the individual will explore and recommend appropriate accommodations for the Medical Center." (Emphasis supplied.)

51.     Although the documentary evidence demonstrates the request was part of a sham process, by letter dated September 21, 2011 Defendant Constantino wrote to Dr. McCance to provide Dr. McCance with a list of Mr. Dave's job responsibilities and to request his opinion as to "whether or not Mr. Dave may need any accommodation to perform his essential job functions".

52.     According to Defendant Mount Sinai's Human Resources Policy,

> "Where the department requires that certification address the employee's ability to perform the essential function of the employee's position, a list must be included of the essential functions of the position with the designation notice."

53.     Defendant Constantino attached a copy of Mr. Dave's job description which, as Defendant Constantino stated, set forth Mr. Dave's primary job responsibilities. Defendant Constantino wrote that Mr. Dave performed his responsibilities by:

> "providing diagnostic, therapeutic and preventative care services; providing a broad spectrum of comprehensive medical services, treating patients with physical ailments, which range from superficial injuries to

acute medical disorders. Additionally, Mr. Dave assists in Orthopaedic surgical cases; participates in post-operative and daily rounds; oversees patient care; prepares patients for the operating room ensuring all documentation is in order, i.e., updating H&P's, consults; collaborate with family, physicians, Orthopedic house staff and other disciplines regarding treatment plans."

54.    Neither the extensive list of "essential job functions" provided by Defendants in Constantino's September 21, 2011 letter, nor the job description provided with the letter, which included an extensive list of additional job functions, specified any responsibilities requiring twisting, bending, or lifting any objects greater than 10 (ten) pounds, or any function that Mr. Dave would have been unable to perform with or without a reasonable accommodation.

55.    Defendant Constantino requested that Dr. McCance "advise [her] by September 23, 2011 as to whether or not she [sic] may continue in these essential functions with or without a reasonable accommodation. If an accommodation is in your judgment required, I would appreciate it if you detail you [sic] recommendation in that regard."

56.    By letter dated October 3, 2011, Dr. McCance again informed Defendants that Mr. Dave could return to work and did not indicate there was any "essential job function" that Mr. Dave couldn't perform with or without a reasonable accommodation. Dr. McCance informed Defendants that Mr. Dave "could return to work at this time".

57.    At no time did Defendants conduct any discussion in good faith amongst themselves, or with Mr. Dave, or with Dr. McCance about making a reasonable accommodation for Mr. Dave's disability. Defendants never initiated or engaged in any interactive process whatsoever as that process is required under applicable law.

58.    On or about October 6, 2011, Defendant Mazie sent Mr. Dave an email requesting that he call her. Mr. Dave called Defendant Mazie and left a voicemail message. Defendant Mazie subsequently emailed Mr. Dave stating that she did not have his then-current telephone number. On that same day, Mr. Dave emailed Defendant Mazie

his phone number. At no time and, in no manner, did Defendant Mazie inform Mr. Dave of the purpose of her call, which is still unknown to Mr. Dave.

59.     On October 7, 2011, six (6) days before Mr. Dave's FMLA leave was to end, Defendant Mazie sent a letter to Mr. Dave stating that Mr. Dave would be terminated from employment on October 14, 2011. In the letter, Defendant Mazie misrepresented the facts and meaning of Dr. McCance's representations by falsely stating that Dr. McCance "did not indicate there was any accommodations [they] could make for [him]." Indeed none of the essential job responsibilities indicated in either Defendant Mazie's or Defendant Constantino's letter required an accommodation.

60.     Without any justification, and in wanton and willful violation of Mr. Dave's rights, Defendant Mazie informed Mr. Dave by letter dated October 7, 2011, with copy to Defendants Constantino and Dumas, as Labor Relations, that Defendants were terminating Mr. Dave's employment effective October 14, 2011 due to his disability. No other reason for termination was provided in the letter or by any other means.

61.     In that letter of termination, Defendant Constantino willfully misrepresented Dr. McCance's two letters to Defendants, stating that "your physician did not indicate there was any accommodation we could make for you." In fact, Dr. McCance did not write that under any reasonable good faith interpretation, nor did he imply it. Defendants willfully lied to Mr. Dave and conspired to violate his rights and break the law.

62.     Defendant Mazie's assertion was patently false and a willful misrepresentation of Dr. McCance's statements. Dr. McCance did not assert that there was no accommodation that could be made. On the contrary, Dr. McCance stated that Mr. Dave *could* return to work "on a light duty basis". Dr. McCance further described the physical restrictions that, if necessary, could require reasonable accommodations during the recovery period.

63.     The October 7, 2011 termination letter gave only one reason for termination: the inability to make an accommodation for Mr. Dave's disability. The relevant facts

demonstrate, however, that Defendants' reason was a pretext for willful and wanton discrimination.

64.    Despite having ample opportunity to do so, Defendants did not satisfy, or even attempt to satisfy, their legal obligations to engage in an interactive process to determine the possibility of an accommodation prior to termination.

65.    Defendants never initiated or engaged in any interactive process, or in any good faith process whatsoever, to determine whether a reasonable accommodation could be made and instead Defendants summarily fired Mr. Dave while he was on FMLA leave.

66.    Defendants' failure to comply with the law is particularly egregious in this case insofar as Defendants (a) worked in the spinal orthopedic department at the Mount Sinai hospital and therefore had a comprehensive understanding of the nature of Mr. Dave's disability and the reasonable accommodations that could be made; (b) worked for the very same hospital where Mr. Dave's surgery was performed and where Mr. Dave recovered; (c) is, and in the case of the individual Defendants' worked for, the very same hospital with which Mr. Dave's spinal surgeon was affiliated; and (d) terminated Mr. Dave while he was on FMLA leave. Defendants' misrepresentations, willful avoidance of interaction, and willful violation of Mr. Dave's Civil and Federal Rights under these circumstances is indefensible and shocking.

67.    Notwithstanding the failure to communicate with Dr. McCance despite the fact that he worked down the hall, internal correspondence by and between Defendants Dumas, Constantino, and Mazie prior to terminating Mr. Dave demonstrates a shocking and vindictive conspiracy by Defendants to discriminate against Mr. Dave and violate his rights.

68.    Indeed, the correspondence by and between Defendants Dumas, Constantino, and Mazie demonstrates not only a concerted effort by Defendants to avoid engaging in the legally mandated interactive process to identify a reasonable accommodation for Mr.

Dave, ***but also the steps taken to circumvent that process and to exaggerate and exploit
any reason to discipline and terminate their disabled employee in a malicious and
spiteful effort to discourage, harass, humiliate, and harm him***. Defendants wantonly,
willfully, and maliciously circumvented the obligations they each knew and understood
they had under the ADA, the NYSHRL, the NYCHRL, the FMLA, and Defendant Mount
Sinai's own Policy

69.      The internal correspondence demonstrates that the Defendants were aware of their
obligations to conduct an interactive process to identify a reasonable accommodation for
Mr. Dave's disability but instead engaged in a sham process designed to avoid liability
for their conscious discrimination in violation of the law and Defendant Mount Sinai
policy. Defendants conspired to ensure that termination of Mr. Dave – while on FMLA
leave no less – was inevitable.

70.      Upon information and belief, Defendants have made reasonable accommodations
of similarly-situated employees in the past.

71.      On or about January 19, 2012, Mr. Dave filed a complaint with the EEOC and
concurrent reciprocal complaints with the New York State and City Divisions of Human
Rights. The Agency charge number for these complaints is 520-2012-00185.

72.      Following a lengthy investigation, the EEOC sent the parties a Letter of
Determination dated November 8, 2014 (the "Letter of Determination") stating that the
Commission had determined, *inter alia*, that

> **Based on documentary evidence submitted by Charging Party,
> Respondent's asserted defense does not withstand scrutiny and the
> Commission has determined that there is reasonable cause to believe
> that Respondent terminated charging party on the basis of disability,
> all in violation of the Americans with Disabilities Act of 1990, as
> amended. This determination is final.**

73.      The Letter of Determination indicated that the EEOC would seek voluntary

conciliation discussions with Respondent-Defendant Mount Sinai and recommended that Defendant pay actual and compensatory damages to Mr. Dave.

74.    Defendant Mount Sinai refused to compensate Mr. Dave for the severe harm it wantonly and willfully caused him.

75.    The EEOC sent Mr. Dave a "Right to Sue" letter dated January 20, 2015.

76.    On or about February 13th 2015, Mr. Dave applied and was interviewed for a position at Mount Sinai in the Department of Cardiothoracic Surgery. Despite being qualified, Defendants retaliated against Mr. Dave by denying him lawful consideration for the position in violation of his rights.

77.    Mr. Dave applied for, and was interviewed for a position in Cardiothoracic Surgery at Mount Sinai Beth Israel, a hospital affiliated with Mount Sinai, and, despite being qualified for this position, Mr. Dave was not hired. Upon information and belief, Defendants retaliated against Mr. Dave by maliciously restricting any Mount Sinai family of hospitals and facilities from hiring or working with Mr. Dave.

78.    Defendants continued this unlawful retaliation by intentionally sabotaging Mr. Dave's search for employment following termination by refusing to respond to requests for references by prospective employers within a reasonable period of time. Defendant Mount Sinai redirected confidential documents to the individual Defendants – the very personnel who discriminated against Mr. Dave. Defendant Constantino only performed her responsibilities following Mr. Dave's intervention through Mount Sinai's Human Resources Department.

79.    On or about April 21, 2016 Plaintiff filed a Complaint with the Southern District Court of New York commencing this action.

80.    By Order dated October 14, 2016, this Court granted Mr. Dave the right to serve

this First Amended Complaint.

## AS AND FOR A FIRST CAUSE OF ACTION
### (Discrimination in Violation of the ADA)
### Against Mount Sinai

81.     Plaintiff hereby repeats and re-alleges each and every allegation in the above paragraphs, inclusive, as if fully set forth herein.

82.     Defendant Mount Sinai discriminated against Plaintiff on the basis of his disability in violation of the ADA by subjecting him to a hostile work environment, and ultimately terminated him, because of his disability, and because Defendant regarded him as disabled.

83.     As a direct and proximate result of Defendant's unlawful discriminatory conduct in violation of the ADA, Plaintiff suffered and continues to suffer monetary and/or economic harm, for which he is entitled to an award of monetary damages and other relief.

84.     As a direct and proximate result of Defendant's unlawful discriminatory conduct in violation of the ADA, Plaintiff suffered and continues to suffer mental anguish and emotional  distress for which he is entitled to an award of monetary damages and other relief.

85.     Defendant's unlawful and discriminatory actions constitute malicious, willful, wanton and/or reckless indifference to Plaintiff's protected rights under the ADA, for which Plaintiff is entitled to an award of punitive damages.

## AS AND FOR A SECOND CAUSE OF ACTION
### (Retaliation in Violation of the ADA)
### Against Mount Sinai

86.     Plaintiff hereby repeats, reiterates, and re-alleges each and every allegation as

contained in each of the preceding paragraphs as if fully set forth herein.

87.    Defendant Mount Sinai retaliated against Plaintiff for his engagement in protected activities, including, but not limited to, making a complaint of discrimination, and for opposing Defendant's discrimination against him on account of his disability.

88.    As a direct and proximate result of Defendant's unlawful retaliatory conduct in violation of the ADA, Plaintiff suffered, and continues to suffer, monetary and/or economic harm, including, but not limited to, loss of past and future income, compensation and benefits for which Plaintiff is entitled to an award of damages.

89.    As a direct and proximate result of Defendant's unlawful retaliatory conduct in violation of the ADA, Plaintiff suffered, and continues to suffer, mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which Plaintiff is entitled to an award of damages

## AS AND FOR A THIRD CAUSE OF ACTION
### (Discrimination in Violation of New York State Human Rights Law)
### Against All Defendants

90.    Plaintiff hereby repeats, reiterates, and re-alleges each and every allegation as contained in each of the preceding paragraphs as if fully set forth herein.

91.    Defendants discriminated against Plaintiff in violation of the NYSHRL by denying him equal terms and conditions of employment, including, but not limited to, subjecting him to a hostile work environment, and by terminating him, because of his disability, and because Defendants regarded him as disabled.

92.    As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, monetary and/or economic damages, including, but not limited to, loss of past and future

income, compensation  and benefits,  for which he is entitled to an award of monetary damages.

93.     As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of the NYSHRL, Plaintiff has suffered and continues to suffer mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence and emotional pain and suffering, for which he is entitled to an award of compensatory damages.

### AS AND FOR A FOURTH CAUSE OF ACTION
**(Retaliation in Violation of New York State Human Rights Law)**
**Against All Defendants**

94.     Plaintiff hereby repeats, reiterates, and re-alleges each and every allegation as contained in each of the preceding paragraphs as if fully set forth herein.

95.     Defendants retaliated against Plaintiff for her engagement in protected activities, including, but not limited to, making a complaint of discrimination, and for opposing Defendants' discrimination against him.

96.     As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, monetary and/or economic harm, including, but not limited to, loss of past and future income, compensation and benefits for which Plaintiff is entitled to an award of damages.

97.     As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which Plaintiff is entitled to an award of damages.

**AS AND FOR A FIFTH CAUSE OF ACTION**
**(Aiding and Abetting Violations of NYSHRL)**
**Against Defendants Dumas, Constantino, and Mazie**

98.     Plaintiff hereby repeats, reiterates, and re-alleges each and every allegation as contained   in each of the preceding paragraphs as if fully set forth herein.

99.     Defendants Defendant Dumas, Defendant Constantino, and Defendant Mazie knowingly or recklessly aided and abetted the unlawful employment practices, discrimination, harassment and retaliation against Plaintiff stated herein in violation of the NYSHRL.

100.    As a direct and proximate result, Plaintiff has suffered, and continues to suffer, monetary and/or economic damages, including, but not limited to, loss of future income, compensation and benefits for which he is entitled to an award of monetary damages.

101.    As a direct and proximate result, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which he is entitled to an award of monetary damages.

**AS AND FOR A SIXTH CAUSE OF ACTION**
**(Discrimination in Violation of New York City Human Rights Law)**
**Against All Defendants**

102.    Plaintiff hereby repeats and re-alleges each and every allegation in the above paragraphs, inclusive, as if fully set forth herein.

103.    Defendants discriminated against Plaintiff on the basis of his disability in violation of the NYCHRL by subjecting him to a hostile work environment, and terminating him, because of his disability and because Defendants regarded him as

disabled.

104.    As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the NYCHRL, Plaintiff has suffered and continues to suffer monetary and/or economic harm, for which he is entitled to an award of monetary damages and other relief.

105.    As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the NYCHRL, Plaintiff has suffered and continues to suffer mental anguish and emotional  distress for which he is entitled to an award of monetary damages and other relief.

106.    Defendants' unlawful and discriminatory actions constitute malicious, willful, wanton and/or reckless indifference to Plaintiffs protected rights under the NYCHRL, for which Plaintiff is entitled to an award of punitive damages.

<u>**AS AND FOR A SEVENTH CAUSE OF ACTION**</u>
**(Retaliation in Violation of the NYCHRL)**
**Against All Defendants**

107.    Plaintiff hereby repeats, reiterates, and re-alleges each and every allegation as contained in each of the preceding paragraphs as if fully set forth herein.

108.    Defendants retaliated against Plaintiff for his engagement in protected activities, including, but not limited to, making a complaint of discrimination, and for opposing Defendants' discrimination against him on account of his disability.

109.    As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the NYCHRL, Plaintiff suffered, and continues to suffer, monetary and/or economic harm, including, but not limited to, loss of past and future income, compensation and benefits for which Plaintiff is entitled to an award of damages.

110.    As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the NYCHRL, Plaintiff suffered, and continues to suffer, mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which Plaintiff is entitled to an award of damages.

## AS AND FOR AN EIGHTH CAUSE OF ACTION
### (Aiding and Abetting in Violation of NYCHRL)
### Against Defendants Dumas, Constantino, and Mazie

111.    Plaintiff hereby repeats and re-alleges each and every allegation in the above paragraphs, inclusive, as if fully set forth herein.

112.    Defendants Defendant Dumas, Defendant Constantino, and Defendant Mazie knowingly or recklessly aided and abetted the discrimination against Plaintiff on the basis of his disability, including, but not limited to, subjecting him to a hostile work environment, and terminating him, because of his disability and because Defendants regarded him as disabled.

113.    As a direct and proximate result of Defendants' unlawful conduct in violation of the NYCHRL, Plaintiff suffered, and continues to suffer, monetary and/or economic harm for which he is entitled to an award of monetary damages and other relief.

114.    As a direct and proximate result of Defendants' unlawful conduct in violation of the NYCHRL, Plaintiff suffered and continues to suffer mental anguish and emotional distress for which he is entitled to an award of monetary damages and other relief.

115.    Defendant's unlawful and discriminatory actions constitute malicious, willful, wanton and/or reckless indifference to Plaintiffs protected rights under the NYCHRL, for which Plaintiff is entitled to an award of punitive damages.

## <u>AS AND FOR A NINTH CAUSE OF ACTION</u>
(Violation of the Family Medical Leave Act)
Against Defendant Mount Sinai

116.     Plaintiff hereby repeats, reiterates, and re-alleges each and every allegation as contained in each of the preceding paragraphs as if fully set forth herein.

117.     At all times relevant herein, Plaintiff was an "eligible employee" within the meaning of the FMLA. At all times relevant herein, Mount Sinai was and is a "covered employer" within the meaning of the FMLA.

118.     Mount Sinai violated the FMLA by unlawfully retaliating against Plaintiff for exercising rights protected by the FMLA by, *inter alia*, subjecting him to a hostile work environment that would reasonably dissuade a reasonable  person from exercising rights protected by the FMLA, preventing him from exercising his rights under the FLMA in the future, and ultimately terminating him.

119.     As a direct and proximate result of Mount Sinai's unlawful conduct in violation of the FMLA, Plaintiff suffered, and continues to suffer, harm for which he is entitled to an award of monetary damages, including, but not limited to, wages, salary, employment benefits and/or other compensation denied or lost to Plaintiff by reason of Mount Sinai's unlawful conduct, plus interest, and other equitable relief.

120.     Plaintiff is entitled to an award of liquidated damages, as Mount Sinai violated the FMLA, such conduct was not in good faith, and there was not a reasonable basis for believing that such conduct was not a violation of the FMLA.

## PRAYER FOR RELIEF

**WHEREFORE, Plaintiff prays for the following relief:**

A.    A declaratory judgment that the actions, conduct and practices of Defendants complained of herein violate the laws of the United States and the State and City of New York;

B.    An award of damages, including liquidated damages, compensatory damages, and/or punitive damages, in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all monetary and/or economic damages incurred as a result of Defendants' unlawful actions;

C.    An award of damages to be determined at trial, plus prejudgment interest, to compensate Plaintiff for harm to his professional and personal reputation and loss of career fulfillment;

D.    An award of damages to be determined at trial, to compensate Plaintiff for physical injuries, emotional distress and/or mental anguish incurred as a result of Defendants' unlawful actions;

E.    An award of costs that Plaintiff has incurred in this action, as well as Plaintiffs reasonable attorneys' fees to the fullest extent permitted by law;

F.    An injunction and order permanently restraining Defendants from engaging in such unlawful conduct; and

G.    Such other and further relief as the Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all claims properly triable by a jury.


Dated:        November 18, 2016
              New York, New York


                                    GRAZIADEI & ASSOCIATES


                                    By:_____

                                    JOHN H. GRAZIADEI (JG 1333)
                                    375 Park Avenue, Suite 2607
                                    New York, New York 10152
                                    Tel: (212) 256-1026
                                    Fax: (212) 256-1028
                                    Email: jgraziadei@graziadei.law
                                    Attorneys for Plaintiff